IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STRATEGIC MANAGEMENT GROUP, INC. | : : : : : : : | CIVIL ACTION<br><br>NO.  04-CV-4715 |
| v. | | |
| ELECTRONIC DATA SYSTEMS CORPORATION | | |

MEMORANDUM AND ORDER

**Kauffman, J.**                                                                                                             **March   31, 2006**

      Plaintiff Strategic Management Group, Inc. ("SMG") brings this breach of contract action against Defendant Electronic Data Systems Corporation ("EDS").  Now before the Court are the parties' cross-motions for summary judgment.  For the reasons that follow, the Court will grant EDS's motion and deny SMG's.

**I. BACKGROUND**

      The contract at issue consists of two separate written agreements.  The first (hereafter the "Services Agreement"), which the parties executed in 1993 and then amended in 1996, is essentially a consulting agreement.  See Services Agreement (attached as Exh. 1 to EDS's Motion for Summary Judgment) ("EDS's Motion").  It provides that SMG will furnish EDS with certain "personal development services" and that the nature of those services is to be set out in "Purchase Orders."  Id. at § 1.1.[1]  In September 2002, the parties executed a Purchase Order for a workshop program SMG was to design for EDS to help "assess and further develop" EDS's managers.  See Purchase Order at 3.  The workshop was to be a "week-long residential program where first-line managers [from EDS] would be brought together from all different parts of the country and the world to participate together in a learning experience."  Deposition of Mitchell Young, June 9, 2005 at 30 (attached as Exh. 5 to EDS's Motion) at

---

[1]     The Services Agreement contains a Termination Clause, which provides that "EDS may terminate this Agreement and/or any Purchase Order issued hereunder for any reason without penalty upon thirty (30) days prior written notice to the Supplier."  Id. at § 6.1.

150. SMG's development of the workshop was to proceed in five distinct phases: (1) the "High Level Design Phase"; (2) the "Development Phase"; (3) the "Pilot Test and Final Production Phase"; (4) the "Train-the Trainer/Assessor Phase"; and (5) the "Evaluation and Closeout Phase." Id. at 5. Additionally, the Purchase Order contemplates that the workshop will incorporate SMG's proprietary simulation software, "Essentials of Business Leadership," and EDS committed to purchase 1,000 licenses for the software. Id.

The final section of the Purchase Order provides a payment schedule. The price for SMG's development of the project was approximately $300,000, to be remitted in three payments. Id. The first $100,000 payment was due when the project began; the second at the completion of the "Development Phase," and the final installment was to be paid when the project was completed. Id.

A separate provision in the "Payment Schedule" covers EDS's purchase of the "Essentials of Business Leadership" software licenses. It provides that "EDS will purchase 1,000 non-refundable simulation licenses at $375 per license." Id. The schedule for those purchases is set out in the following chart:

|         | Payment   | Balance   | Licenses Purchased |
| ------- | --------- | --------- | ------------------ |
| Dec-02  | $105,000  | $270,000  | 280                |
| Mar-03  | $67,500   | $202,500  | 180                |
| Jun-03  | $67,500   | $135,000  | 180                |
| Sep-03  | $67,500   | $67,500   | 180                |
| Dec-03  | $67,500   | $0        | 180                |
| Total   | $375,000  |           | 1,000              |

On November 22, 2002, when the project was in its "Development Phase," and before any of the software licenses were scheduled to be purchased, EDS notified SMG to stop all work. EDS was experiencing financial difficulties and was performing a budget review of all

2

training projects. See SMG's Brief in Opposition to EDS's Motion for Summary Judgment ("SMG's Opposition Brief") at 8; Deposition of Elizabeth Townson, June 23, 2005 (attached as Exh. 4 to EDS's Motion) at 49:18-50:18.  At no time subsequent to the November 22, 2002 stoppage did EDS authorize any additional work and none was in fact performed. EDS's Memorandum at 4.  On November 25, 2002, SMG submitted to EDS a document entitled "Work Stoppage and Accrued Costs to Date," which showed a "Balance Due" of $95,504 on the project. See Exh. 7 to EDS's Motion.  EDS paid that balance in full, bringing the total EDS had paid for the project to the sum of $295,504. Id.

On April 24, 2003, SMG, for the first time, sent invoices seeking payment for 460 of the software licenses.  See EDS's Memo; Young Dep. 173-80; invoices (attached as Exh. 13 to EDS's Motion).  By letter dated May 23, 2003, EDS disputed the invoices on the grounds that the Purchase Order had been terminated in November 2002.  See Meng Letter (attached as Exh. 13 to EDS's Motion).

On October 7, 2004, SMG filed this action for breach of contract.  The Complaint contains two counts: the first seeks payment for the work SMG performed prior to the EDS notice on November 22, 2002 to stop all work on the project; the second seeks $375,000 for the software licenses.  SMG has since acknowledged that the $95,504 payment EDS had remitted in response to the "Work Stoppage and Accrued Costs to Date" report satisfied EDS's obligations with regard to the development work, and voluntarily dismissed count one, leaving EDS's alleged obligation to pay for the licenses as the sole issue between the parties. Both EDS and SMG have filed motions for summary judgment.

## II. LEGAL STANDARD

In deciding a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the test is "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine the evidence in the light most favorable to the non-moving party and resolve all reasonable inferences in that party's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "there can be 'no genuine issue as to any material fact' . . . [where the non-moving party's] complete failure of proof concerning an essential element of [its] case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## III. ANALYSIS

EDS argues that its obligation to purchase the software licenses is contingent on SMG's completing development of the workshop.[2] Because that phase indisputably was never reached, EDS argues that SMG is not entitled to payment. SMG, in turn, argues that EDS's obligation to purchase the licenses was independent of completion of the workshop and that EDS's work stoppage order on November 22, 2002 did not affect its promise to purchase the software licenses.

Under Texas law,[3] the "primary concern when interpreting a contract is to enforce the parties' intent as contractually expressed, and an unambiguous contract will be enforced as written." Interstate Contracting, 407 F.3d at 712. "Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the

---

[2] In effect, EDS is arguing that SMG's completing development of the workshop was a condition precedent to its obligation to purchase the software licences. See T.F.W. Mgmt., Inc. v. Westwood Shores Property Owners Ass'n, 162 S.W.3d 564, 570 (Tex. App. 2005) ("A condition precedent to an obligation to perform is an act or event, which occurs subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty.").

[3] The Services Agreement provides that the contract "shall be governed by and construed in accordance with the laws, other than choice of law rules, of the State of Texas." See Services Agreement at 13.

circumstances present when the contract was entered.  Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996).  "Lack of clarity does not create an ambiguity and 'not every difference in the interpretation of the contract ... amounts to an ambiguity.'" Universal Health Services 121 S.W.3d at 746 (quoting Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 134 (Tex. 1994)).  Rather, a contract should be deemed ambiguous only when it is "susceptible to more than one reasonable meaning after application of established rules of construction."  Id.

When the contract here is read as a whole, it is clear that EDS's obligation to purchase the licenses is contingent on SMG's completing development of the workshop.  See J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003) ("No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument.").  EDS agreed to purchase the licenses expressly for the purpose of using them in the workshop SMG was to develop.  See EDS's Motion at 5; see also Purchase Order at 19 (providing that EDS will purchase 1000 licenses of SMG's Essentials of Business Leadership simulation to be used in the 1st Line Leader Captsone Workshop." (emphasis added).  The software licenses were thus only one component of the overall management training product SMG had contracted to provide EDS.  Their utility to EDS depended directly on whether the company would be able to use them in the workshop.[4]  See Frost Nat'l Bank v. L&F Distrib., 165 S.W.3d 310, 312 (Tex. 2005) ("We construe contracts 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.") (quoting Reilly v. Rangers Mgmt., Inc., 727 S.W.2d 527, 530 (Tex. 1987).  Since development of the workshop was never completed, EDS was not in

---

[4]     It is undisputed that EDS has not used the software in any manner whatsoever.

breach of the contract when it refused to pay for the useless licenses.[5]  Accordingly, the Court will enter summary judgment in EDS's favor.

---

[5]     EDS's notice to stop all work on November 22, 2002 indisputably was not a breach of the contract.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STRATEGIC MANAGEMENT GROUP, INC. | : | CIVIL ACTION |
| | : | |
| | : | NO. 04-CV-4715 |
| v. | : | |
| | : | |
| ELECTRONIC DATA SYSTEMS CORPORATION | : | |
| | : | |

## ORDER

**AND NOW**, this   31st   day of March, 2006, upon consideration of Defendant's Motion for Summary Judgment (docket no. 15) and the responses thereto, and Plaintiff's Motion for Summary Judgment and Award of Attorney's Fees (docket no. 18) and the response thereto, and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that

(1) Defendant's Motion for Summary Judgment is **GRANTED**;

(2) Plaintiff's Motion for Summary Judgment is **DENIED**;

(3) the Clerk shall **ENTER** Judgment for Defendant and mark this case **CLOSED**.

BY THE COURT:


/s/ Bruce W. Kauffman
**BRUCE W. KAUFFMAN,  J.**